GOLDAN v. DELAWARE & E. RY. CO. et al.

(Supreme Court, Appellate Division, First Department. March, 1911.)

Appeal from Special Term, New York County.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

---

PEOPLE ex rel. NEW YORK, O. & W. R. CO. v. WOODBURY et al., State Board of Tax Com'rs (two cases).

(Supreme Court, Special Term, Albany County. April 10, 1911.)

TAXATION (§ 496*)—FRANCHISES—ASSESSMENTS—CERTIORARI—RETURN.

It is enough that, to a writ to review special franchise assessments made by the state board of tax commissioners, it makes return of the method which it actually used, and the information it had which led it to fix the amount of the assessment, without setting forth its processes, or its mathematical calculations, or the relative weight given to the factors; and this, though one be not able, by using the method returned, to figure out such an assessment at the amount fixed by the board.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 496.*]

Two certiorari proceedings, both on the relation of the New York, Ontario & Western Railroad Company, against Egburt E. Woodbury and others, constituting the State Board of Tax Commissioners. Relator moves for a further return. Denied.

C. L. Andrus, for relator.

Thomas J. Carmody, Atty. Gen., and C. R. McSparren, Deputy Atty. Gen., for respondent.

RUDD, J. In each of the above-entitled proceedings a writ of certiorari has issued to review a special franchise tax assessment made by the state board of tax commissioners against the relator. Pursuant to the writ granted in each proceeding, a return was made. Subsequently a motion by the relator for an amended or further return resulted in an order of the Special Term requiring the defendants to make such further return. The second return having been filed, the relator again moved for a further return. An order was entered, upon consent, directing a third further return, and the third return is here under review.

The relator contends that the rules applicable to the form of a return have been definitely stated by the Court of Appeals in the Buf-

falo Gas Company Case, 199 N. Y. 162, 92 N. E. 215. In that case the court said that the tax law requires that the return by the state board of tax commissioners to a writ of certiorari to review the assessment of a special franchise "must concisely set forth such other facts as may be pertinent and material to show the value of the property assessed on the roll and the grounds for the valuation made by the assessing officers." The court also said:

"The commissioners should disclose the modus operandi leading to the result which they reached."

In the Lehigh Valley Railway Co.'s Case, decided at the same time, and reported in the same volume, at page 167, 92 N. E. 217:

"The return of the state board of tax commissioners alleged that the valuation of the special franchise was made in gross and as a whole, and that, 'in arriving at the value of the intangible. property to be considered in making the said valuation of the special franchise, said board did not limit itself to any one fixed rule or method of determining said value, but in the light of all the circumstances and conditions affecting the value of said intangible property, which were before it as aforesaid, exercised its best judgment as to the value of said intangible property.' "

This statement was condemned by the Court of Appeals, and the court said:

"This language does not throw any more light upon the grounds of valuation adopted by the assessing officers than did the language of the return in the Buffalo Gas Company Case."

In the Lehigh Valley Railway Co.'s Case, the court referred to the fact that among the papers mentioned in the return as having been before the state board at the time it valued the relator's special franchise—

"were certain tables exhibiting a classification of some railway crossings over highways, based upon the population of the municipality in which they were situated, the importance of the crossing to the railroad, the importance of the highway to the public, the amount of the obstruction caused by the railroad, and various other elements regarded as proper to be considered in valuing special franchises of this character."

The Attorney General contended that these records show the value which was assumed by the board in respect to each crossing, and sufficiently informed the relator as to the method in which the board reached this valuation in gross. This position, however, was not sustained by the court; for it said:

"If the return had shown what was asserted by the Attorney General and •by the chairman of the state board of tax commissioners upon the oral argument, it would have been an ample compliance with the requirements of the tax law."

The court also said, referring to the tables exhibiting a classification of some railway crossings on highways:

"If the state board of tax commissioners has classified the steam railroad crossings in the various municipalities of this state for the purposes of special franchise taxation, and has set out this classification in a table, and has valued the relator's special franchise by the use of that table, it would be very easy to say so in the return, and would indicate the grounds of the valuation assailed through the medium of the writ of certiorari."

The returns here under review are intended by the state board of tax commissioners to be made in compliance with the decision of the Court of Appeals in the Lehigh Valley Railway Company's Case, and they do say that the values have been established by the use of the tables. This is not an application in any way affecting the legality of the assessments herein. It must be confined to a determination as to whether the state board in the return made has set down correctly and fully the method it followed, and the information it had, which led the board to fix the amount of the special franchise tax assessment.

The commissioners are not required to set forth in their return their mental processes, nor their mathematical calculations, nor the relative weight given to the factors which must enter in the consideration of all of the questions involved in reaching their determination. It is not necessarily a test as to the correctness of the return that one is not able, by using the method of the board, to figure out the value of a special franchise assessment at the amount fixed and determined by the commissioners. Such failure may demonstrate the weakness of the method, and give rise to serious question as to whether the commissioners are justified in using that which they call a method, but which is not able to justify itself.

It is admittedly very difficult for the commissioners to ascertain the value of a special franchise consisting of the crossing of a public highway by a steam railroad track. The valuation of franchises involving railway crossings of highways, in number about 8,000 in the state, presents to those who are charged with the duty of determining what the value of the franchise is every imaginable question of which it is possible to conceive, in the relation which the citizen and the community bear to the privilege or grant. That these difficulties exist does not relieve the state board of tax commissioners from returning fully, frankly, and completely the method which they used, and the proceedings which they took, and the information which they had. If they had no method, or if in their opinion it is impossible to devise a method, then they should thus state the fact.

In the execution of this law, and in the effort to fix a value upon the intangible property, in connection with the special franchise, there has been evidently on the part of the state board of tax commissioners a gradual growth and development in the method of their procedure. In the Lehigh Valley Railway Company Case it seems that as a part of the information which they had were certain tables known as "classification tables." In making the return, however, in that case, they did not state that they used these tables, or to what use they put them, or for what reason they had them, and therefore it seems that the Court of Appeals said, as above stated, that it would have been easy for the state board of tax commissioners to have said in the return that it had reached a valuation of the relator's special franchise by the use of the tables.

In the returns here under review, the state board of tax commissioners say that their effort has been to comply in the making of these returns with the decision of the Court of Appeals in the Lehigh Valley Railway Company's Case, and for that reason the returns set forth, not only that which it has been customary heretofore to set down as among the elements controlling the board of tax commissioners in

reaching their determination, but also has added as a schedule to the return what are known as the "application tables," and that the papers on file, which were considered by the state board of tax commissioners in making the assessments, were the report of the relator to the state board, its complaint filed on grievance day, the agents' cards, and the valuation sheets.

The report of the relator, made in compliance with the statute, gives a great deal of information concerning the relator's property; the agents cards show, from personal investigation and inquiry by the agents of the state board of tax commissioners, the physical conditions existing at the crossing covered by the franchise, together with a classification according to standard crossing using symbols of application table; the valuation sheets show the tentative and final valuations, the relator's valuation of the tangible and its estimated value, with a description of the property by the relator; and the complaint by the relator shows the company's objection to the tentative valuations as fixed by the state board. In addition to that, the board returns, as above stated, the application tables.

These are the results of a classification varying with the population of a municipality, the importance of a crossing to the railroad, the importance of the highway to the public, the amount of obstruction caused by the use of the railroad, and this classification is expressed by arbitrary symbols. Its purpose is merely to secure uniformity between the intangible part of the special franchises of two crossings situated under similar conditions. The figures are arbitrary aids to the exercise of the judgment of the board, and they do not set the valuation on the crossings; but they are used in reaching a determination as to what the value of the franchise is. In other words, the state board has endeavored to, and it seems as if it had succeeded, in complying with the decision of the court in the Lehigh Valley Railway Company's Case. The state board says in effect in these returns that it has classified the steam railway crossings in the various municipalities of the state, and that it has set out this classification in tables known as the "application tables," and has valued the relator's special franchise by the use of that table.

It is difficult for the court to understand the exact use to which these application tables were put, and it does not understand how the commission reached certain figures as an arbitrary aid, and it is particularly difficult to understand why, if the application tables and the classification of steam railway crossings are of any particular avail to the board in reaching a proper determination as to value, that, having the tables, two crossings apparently similar in physical conditions and bearing practically the same relation to the railway and to the public, the values would not work out by the use of the tables at the same figures; but it is not for the court here to criticise, or to endeavor to reconcile, or to suggest methods. It is only our effort to determine whether the state board has returned the method which it has actually used, whether it is one which we can understand or not. It seems as if the returns were in compliance with the law, as we understand it.

An order, therefore, may be entered in each case denying the motion made for further return, with $10 costs.